**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| FREESTATE JUSTICE,<br><br>                          Plaintiff,<br><br>     v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY<br>COMMISSION and ANDREA LUCAS, in<br>her official capacity as CHAIR of the<br>EQUAL EMPLOYMENT OPPORTUNITY<br>COMMISSION,<br><br>                        Defendants. | No. 1:25-cv-02482-GLR |

<u>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................. 1

I.    The Court Should Dismiss For Lack Of Standing. ........................................... 1

     A.    FreeState Lacks Standing To Challenge The Commission's Discretionary Enforcement Decisions. ........................................................................... 1

     B.    FreeState Does Not Assert A Cognizable Injury. ..................................... 4

     C.    FreeState's Asserted Injuries Are Not Redressable. ................................ 8

II.   FreeState's APA Claims Are Not Reviewable. ................................................. 9

     A.    The Alleged Policy Is Neither Discrete Nor Final. .................................. 9

     B.    FreeState Has An Adequate Alternative Remedy ................................... 11

     C.    EEOC's Enforcement Decisions Are Committed To Agency Discretion. ........... 12

III.  Certain Claims Should Be Dismissed On The Merits. .................................... 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Al Otro Lado, Inc. v. McAleenan*,
   394 F. Supp. 3d 1168 (S.D. Cal. 2019) ............................................................... 10

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974) ............................................................................................... 14

*Am. Acad. of Pediatrics v. FDA*,
   379 F. Supp. 3d 461 (D. Md. 2019)................................................................... 4, 8

*Am. Fed'n of Teachers v. Dep't of Educ.*,
   779 F. Supp. 3d 584 (D. Md. 2025)...................................................................... 11

*AFL-CIO v. Department of Labor*,
   778 F. Supp. 3d 56 (D.D.C. 2025)...................................................................... 6, 7

*Army Corps of Engineers v. Hawkes*,
   578 U.S. 590 (2016) ............................................................................................ 10

*AT&T Co. v. EEOC*,
   270 F.3d 973 (D.C. Cir. 2001)............................................................................. 11

*Balt. Gas and Elec. Co. v. FERC*,
   252 F.3d 456 (D.C. Cir. 2001)............................................................................... 3

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................ 10

*Casa de Md. v. DHS*,
   924 F.3d 684 (4th Cir. 2019) ......................................................................... 12, 13

*Citizens for Responsibility and Ethics in Washington v. FEC*,
   993 F.3d 880 (D.C. Cir. 2021)............................................................................. 14

*Clapper v. Amnesty Int'l*,
   568 U.S. 398 (2013) .............................................................................................. 6

*Cmty. for Creative Non-Violence v. Pierce*,
   786 F.2d 1199 (D.C. Cir. 1986)........................................................................ 9, 14

*Coal. for Humane Immig. Rts. v. DHS*,
   780 F. Supp. 3d 79 (D.D.C. 2025)......................................................................... 5

*Dreher v. Experian Info. Solutions, Inc.*,
   856 F.3d 337 (4th Cir. 2017) ................................................................................. 7

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) .............................................................................................. 7

*Elec. Priv. Info. Ctr. v. USPS*,
   2022 WL 888183 (D.D.C. Mar. 25, 2022) ........................................................... 8

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................. 5, 6

*Gen. Tel. Co. of Nw., Inc. v. EEOC*,
  446 U.S. 318 (1980) ................................................................................. 7

*Georator Corp. v. EEOC*,
  592 F.3d 765 (4th Cir. 1979) ................................................................ 10

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................. 6

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................... 12, 14

*Hotel and Rest. Emps. Union v. Smith*,
  846 F.2d 1499 (D.C. Cir. 1988) (en banc) ............................................. 3

*Inova Alexandria Hosp. v. Shalala*,
  244 F.3d 342 (4th Cir. 2001) ................................................................ 14

*King v. Burwell*,
  759 F.3d 358 (4th Cir. 2014) ................................................................ 12

*Knowledge Ecology Int'l v. NIH*,
  2019 WL 1585285 (D. Md. Apr. 11, 2019) ............................................ 5

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) ................................................................................. 1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................. 2, 7

*Lunney v. United States*,
  319 F.3d 550 (2d Cir. 2003) ................................................................. 14

*Mach Mining, LLC v. EEOC*,
  575 U.S. 480 (2015) ........................................................................... 2, 14

*Nat'l Fair Hous. All. v. Bank of Am., N.A.*,
  2025 WL 2030225 (D. Md. July 21, 2025) .......................................... 5, 6

*Nat'l Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995) ................................................................ 5

*Nielsen v. Hagel*,
  666 F. App'x 225 (4th Cir. 2016) ......................................................... 11

*NRC v. Texas*,
  605 U.S. 665 (2025) ............................................................................... 15

*Occidental Life Ins. Co. of Cal. v. EEOC*,
  432 U.S. 355 (1977) ................................................................................. 7

*PETA v. USDA*,
  797 F.3d 1087 (D.C. Cir. 2015) .............................................................. 6

*Phila. Yearly Mtg. of Rel. Soc'y of Friends v. DHS*,
    767 F. Supp. 3d 293 (D. Md. 2025)................................................................. 2

*R.I.L.-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015)............................................................... 10

*Republican National Committee v. N.C. State Board of Elections*,
    120 F.4th 390 (4th Cir. 2024)......................................................................... 6

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013)......................................................................... 4

*Sierra Club v. Larson*,
    882 F.2d 128 (4th Cir. 1989)................................................................... 3, 14

*Steves and Sons, Inc. v. JELD-WEN, Inc.*,
    988 F.3d 690 (4th Cir. 2021)......................................................................... 9

*Swecker v. FERC*,
    2022 WL 4534944 (D.D.C. Sep. 28, 2022)................................................... 4

*Swift v. United States*,
    318 F.3d 250 (D.C. Cir. 2003)....................................................................... 9

*Trump v. United States*,
    603 U.S. 593 (2024)....................................................................................... 3

*United States v. Texas*,
    599 U.S. 670 (2023)........................................................................... 1, 2, 3, 4

*Ward v. EEOC*,
    719 F.2d 311 (9th Cir. 1983)................................................................. 10, 11

**Statutes**

5 U.S.C. § 701(a) ................................................................................................ 14

42 U.S.C. § 2000e-4(c) ...................................................................................... 15

42 U.S.C. § 2000e-5(b) ...................................................................................... 15

**Other Authorities**

118 Cong. Rec. 4941 (1972)................................................................................. 7

EEOC, *Brittany Bull Panuccio, Commissioner*, https://www.eeoc.gov/brittany-bull-panuccio-commissioner.............................................................................................. 15

EEOC, *FY 2020 Charge Report Submitted to Congress*, https://www.eeoc.gov/legislative-affairs/fy-2020-charge-report-submitted-congress .............................................. 11

EEOC, *Section 83 Disclosure of Information In Charge Files*, https://www.eeoc.gov/section-83-disclosure-information-charge-files................................................................ 8

Kristin E. Hickman & Richard J. Pierce, Jr.,
    Administrative Law Treatise § 19.7 (7th ed. 2025).................................... 3

In its response opposing the Commission's Motion to Dismiss, FreeState Justice (FreeState) fails to show that it has standing for this suit and confirms that this suit is an improper attack on the exercise of the Commission's enforcement discretion. *See* ECF No. 26 (Opp.); ECF No. 24-1 (Mot.). At one point, FreeState emphasizes that the Commission "does not deny these allegations" about a supposed Policy (referred to here as the alleged Policy) relating to the Commission's treatment of charges filed by transgender individuals. Opp. 1. Of course, this is the pleading stage, and the Commission must accept as true the plausibly pled allegations. Even as pled, those allegations fail to survive the Commission's Motion, and FreeState's other arguments are unpersuasive, as discussed below.

## ARGUMENT

### I.    The Court Should Dismiss For Lack Of Standing.

#### A.    FreeState Lacks Standing To Challenge The Commission's Discretionary Enforcement Decisions.

The Supreme Court in *United States v. Texas* relied on the "fundamental Article III principle" that a party "lacks standing to contest the policies of the prosecuting authorit[ies] when he himself is neither prosecuted nor threatened with prosecution." 599 U.S. 670, 674 (2023) (quotation marks omitted); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). FreeState never explains how it can circumvent that rule given it is not the object of any Commission discrimination cases. FreeState's reasons for why *Texas* does not control are unpersuasive.

In an effort to avoid *Texas*, FreeState describes its claims as challenging a categorical policy of "refusing to investigate and litigate certain types of charges." Opp. 14. This response is unavailing. For one thing, FreeState still is not the object of the Commission's prosecutions. Thus, the usual rule that non-targets lack standing to challenge the non-prosecution of others still applies. *See Texas*, 599 U.S. at 678 (2023) ("When 'a plaintiff's asserted injury arises from the

government's allegedly unlawful regulation *(or lack of regulation)* of someone else, much more is needed' to establish standing." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (emphasis added)).

Regardless, the Prayer for Relief makes clear that FreeState does "ask the EEOC to take more enforcement actions."   Opp. 16.   FreeState expressly asks this Court to enjoin the Commission from "categorically declining to prosecute new or ongoing litigation involving transgender workers."  Compl. at 40.  Clearly, then, what FreeState wants is more enforcement actions in the same way that the states in *Texas* wanted to vacate guidance that, in their view, directed too few immigration arrests.  *Phila. Yearly Mtg. of Rel. Soc'y of Friends v. DHS*, 767 F. Supp. 3d 293 (D. Md. 2025), is not to the contrary.  The court there recognized a cognizable injury because the challenged policy "could result in arrests of specific individuals," thereby "exercis[ing] coercive power over an individual's liberty or property," unlike the policy challenged in *Texas*.  *Id.* at 315 (quoting *Texas*, 599 U.S. at 678).  In contrast, the alleged Policy here involves no coercive power and will result in less enforcement, assuming FreeState's allegations are true. This suit is thus about "alleged Executive Branch under-enforcement" of laws, precisely the kind of challenge for which there is no standing.  *Texas*, 599 U.S. at 681.

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015), does not suggest otherwise.  That case dealt with a different provision in Title VII—the conciliation requirement, which requires the Commission to attempt voluntary resolution of charges before bringing suit—that imposed "certain concrete standards pertaining to" what the conciliation duty requires, including the "specified actions" that the Commission must take.  *Id.* at 487–89.  No similar standards apply to the Commission's investigation of charges.  Nor could there be, given the well-established precedent that the decision to investigate rests in "the special province of the Executive Branch."

*Trump v. United States*, 603 U.S. 593, 620 (2024) (quotation marks omitted); *see also* Mot. 10 (collecting authorities).  One precedent involving a different statutory provision with readily enforceable standards does not establish a "precedent, history, or tradition" permitting judicial review of an agency's decision on whether to investigate or not.  Opp. 17.

*Texas*'s reasoning is also not limited to policies that "involve issues of resource allocation or prudent docket management."  *Id.*  The Supreme Court acknowledged that the Executive "possesses authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law."  *Texas*, 599 U.S. at 678.  That authority entitles agencies like the Commission to decide "to withhold enforcement" if it so chooses without review by courts. *Balt. Gas and Elec. Co. v. FERC*, 252 F.3d 456, 459 (2001) (citing *Hotel and Rest. Emps. Union v. Smith*, 846 F.2d 1499, 1519 (D.C. Cir. 1988) (en banc) (Silberman, J., separate opinion)).

In any event, the alleged Policy obviously involves "issues of resource allocation."  Opp. 17.  The Commission "invariably lacks the resources" to investigate all charges it receives, which often number in the tens of thousands each year.  *Texas*, 599 U.S. at 680.  Thus, any alleged Policy not to investigate or act on a set of cases reflects the Commission's decision about how to "prioritize its enforcement efforts."  *Id.* at 679; *see Hotel*, 846 F.2d at 1520 (Silberman, J., separate opinion) (noting that "refusal to suspend enforcement over a broad category of cases" "of course" implicates agency's "judgments with respect to resource allocation"); *see also* Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise* § 19.7 (7th ed. 2025) ("selective enforcement" by an agency involves allocating "limited resources in accordance with a long list of priorities").  Courts cannot second-guess that decision within the confines of the separation of powers.  *See Sierra Club v. Larson*, 882 F.2d 128, 133 (4th Cir. 1989) (agencies, not courts, are "equipped to decide where to focus scarce resources").

3

As a last gasp, FreeState suggests that the alleged Policy entirely abdicates the Commission's statutory responsibility. Opp. 17. Abdication is an "extreme case," *Texas*, 599 U.S. at 683, and represents at most a "narrow" exception to the rule that agency enforcement decisions are not judicially reviewable, *Swecker v. FERC*, 2022 WL 4534944, at *3 (D.D.C. Sep. 28, 2022). Here, FreeState has not alleged a failure by the Commission to investigate all charges submitted by transgender individuals, or to otherwise not enforce various antidiscrimination laws "at all," foreclosing any suggestion that the Commission has somehow abdicated its duty to enforce Title VII. *Am. Acad. of Pediatrics v. FDA*, 379 F. Supp. 3d 461, 493 (D. Md. 2019). Rather, FreeState challenges an alleged decision to allocate resources to certain types of charges. FreeState cannot cry "abdication" simply because the Commission makes enforcement and resource decisions that FreeState doesn't like.[1]

### B.  FreeState Does Not Assert A Cognizable Injury.

Even if courts could consider claims challenging the Executive's enforcement discretion, none of FreeState's asserted injuries are cognizable under traditional standing principles.

**1.**    First, FreeState fails to establish organizational standing. "[A]n injury to organizational purpose, without more, does not provide a basis for standing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013). FreeState thus cannot simply state that the alleged Policy "undermines [its] work" to establish standing. Opp. 8. Moreover, the Supreme Court has recently rejected the notion that "standing exists when an organization diverts its resources in response to a defendant's actions."

---

[1] FreeState suggests that the Commission's logic would allow it not to investigate all charges filed by various protected classes. Opp. 16. That is not the argument. Rather, the Commission's position is that a third party like FreeState lacks standing to challenge the Commission's enforcement decisions regarding individual charges. Whatever claims or defenses the individual, or the employer, might have in those circumstances are irrelevant in this case.

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Rather, an organization must allege that the defendant's action forced expenditure of resources "in a manner that keeps [it] from pursuing its true purpose[s]." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Activities that are "in furtherance of" an organization's mission cannot confer organizational standing. *See Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 2025 WL 2030225, at *8 (D. Md. July 21, 2025); *see also Knowledge Ecology Int'l v. NIH*, 2019 WL 1585285, at *6 (D. Md. Apr. 11, 2019) (advocacy costs could not establish standing when advocacy was plaintiff's "core purpose as an organization").

These principles doom FreeState's organizational standing. Nothing about the alleged Policy prevents FreeState from providing its "core service" to file charges with the Commission. Opp. 9. Indeed, FreeState admits that it will continue to file those charges despite the alleged Policy. *See id.* at 11 n.7. After all, charges are the necessary first step for any Title VII litigation, so filing them is neither a new burden nor a wasted one—it remains an essential step in the process.

FreeState also cannot rely on its other alleged diversions of resources. Dual filing at MCCR and the Commission furthers FreeState's mission, as the Commission argued. *See* Mot. 15. And to the extent dual filing is a new practice prompted by the alleged Policy, FreeState is simply expanding its services to cover MCCR filings. "When a nonprofit merely expands its operations to address increased demands in the communities it serves, its activities have not been tampered with" such that the organization has standing. *Coal. for Humane Immig. Rts. v. DHS*, 780 F. Supp. 3d 79, 90 (D.D.C. 2025). So too for the "alternative non-legal services" that FreeState says it "now must provide," Opp. 10, which correspond to FreeState's mission to provide "freedom from all forms of unlawful discrimination in the workplace," Compl. ¶ 131.

Last, FreeState's assertion that the alleged Policy "threatens to decrease" the number of FreeState's clients because transgender individuals will cease "utilizing FreeState's legal services" is too speculative. Opp. 9, 11. Such "speculation about the decision of independent actors" cannot confer standing. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013). FreeState also cannot simultaneously complain that the Policy creates more work in the form of MCCR filings and say that the Policy will create a loss of clients.

FreeState's other authorities are not persuasive. The decision in *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015), rests on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which the Supreme Court has recently labeled an "unusual case" that should not be extended beyond its unique context. *FDA*, 602 U.S. at 396. In other cases, plaintiffs more clearly alleged impacts to their mission. For example, the plaintiff's voter registration and counseling mission in *Republican National Committee v. N.C. State Board of Elections*, 120 F.4th 390, 397 (4th Cir. 2024), was directly harmed because the plaintiff could not ascertain how many eligible voters would be voting. FreeState never alleges that it cannot determine the number of potential transgender clients or where best to allocate any of its resources. As for *AFL-CIO v. Department of Labor*, 778 F. Supp. 3d 56 (D.D.C. 2025), that decision is incorrect and, regardless, involved broader restrictions on organizational access. Diverting resources to "find[] other ways to provide direct assistance" in furtherance of a mission to help consumers experiencing financial difficulties—as those plaintiffs did, *id.* at 75 (cleaned up), cannot confer organizational standing, *see Nat'l Fair Hous. All.*, 2025 WL 2030225, at *8. In any event, the CFPB complaint system there was "irreplaceable" because the plaintiffs used it to lodge complaints on behalf of individuals *and* because their "direct services and their consumer education initiatives" depended on access to the complaints. *AFL-CIO*, 778 F. Supp. 3d at 75. Given the number of systems and consumer

complaints involved—"over 10 million"—trust in the confidentiality of those systems was required for them to be useful. *Id.* at 67. That does not remotely describe this case.

      **2.**    FreeState similarly has no concrete injury to enforce the alleged and procedural "requirement that the EEOC investigate all charges of discrimination." Opp. 13. As an initial matter, FreeState misunderstands the intended beneficiary of that supposed requirement. The Supreme Court has clearly stated that the Commission "is guided by the overriding public interest in equal employment opportunity." *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 326 (1980) (quoting 118 Cong. Rec. 4941 (1972)). It "does not function simply as a vehicle for conducting litigation on behalf of private parties." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 368 (1977). Rather, the Commission acts to vindicate a public interest. How it does so might carry ancillary benefits for charging parties, but any process was "designed to protect" that public interest, not a private one. *Lujan*, 504 U.S. at 578 n.8. That is precisely why the Commission is not bound by the charging party's decision to arbitrate any discrimination claims, *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 (2002), and why the Commission's lawsuits are neither subject to the statutes of limitations applicable to individuals, *see Occidental*, 432 U.S. at 367–70, nor are representative suits under Rule 23, *see Gen. Tel. Co.*, 446 U.S. at 330–31. "The EEOC exists to advance the public interest in preventing and remedying employment discrimination," and so its processes are not designed to protect charging parties such that FreeState (which isn't even a charging party) can enforce procedural violations. *Id.* at 331.

      Even if FreeState could enforce the investigation requirement, it lacks a viable informational injury because the Commission is not depriving FreeState of any information to which it is "legally entitled." *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 345 (4th Cir. 2017). FreeState complains that it has not been able to obtain "charge files" due to the alleged

lack of investigations. Opp. 12. This assertion fails to create a cognizable informational injury—if there is no investigation, there is no file, but that is not the same as withholding the file.[2]

FreeState has cited no authority requiring the Commission to create a charge file for every charge that is submitted. The Freedom of Information Act (FOIA) is no answer because it "does not require the government to create documents." *Elec. Priv. Info. Ctr. v. USPS*, 2022 WL 888183, at *3 (D.D.C. Mar. 25, 2022); *see id.* (FOIA "requires access to records when a request has been made and [FOIA] exemptions are inapplicable"). The other authority cited by FreeState—Section 83 of the Commission's compliance manual—similarly requires access subject to certain exemptions but does not require creation of information.[3] Because FreeState cites no authority requiring the Commission to create charge files in the first place, it lacks any entitlement to charge files that the Commission has not created under the alleged Policy.

And even if the Commission were creating charge files for each charge subject to the alleged Policy—which is unclear based on FreeState's allegations—FreeState never alleges that the Commission has blocked those files from disclosure or otherwise impeded access to them. Rather, FreeState's problem appears to be that the files don't contain the kind of "key" information that FreeState wants. Opp. 13. But FreeState cites no authority that charge files must contain particular contents, so this theory cannot support an informational injury for standing.

### C. FreeState's Asserted Injuries Are Not Redressable.

Regarding redressability, FreeState again recasts its pleading in an attempt to avoid standing doctrine. The Prayer for Relief seeks an order prohibiting the Commission from "denying transgender workers the full set of Title VII-mandated charge-investigation and other enforcement

---

[2] *Am. Acad. of Pediatrics*, 379 F. Supp. 3d at 475 (cited at Opp. 12), is inapposite because FreeState has not been deprived of any information.
[3] *See* EEOC, *Section 83 Disclosure of Information In Charge Files*, https://www.eeoc.gov/section-83-disclosure-information-charge-files.

processes." Compl. at 40. Surely, such an order directing how the Commission should triage and resolve incoming charges is an example of the Court "weigh[ing] in" on—indeed, directing— when the Commission must investigate. Opp. 15. Yet "[t]he power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws." *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986). Similarly, the requested injunction would prohibit the Commission from "declining to prosecute new or ongoing litigation involving transgender workers." Compl. at 40. Again, were the Court to issue such an order, it would be directing the Commission's decisions regarding which lawsuits to initiate or continue, Opp. 15, an unprecedented intrusion into decisions which are firmly in the ken of the Executive Branch, *see Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003).

## II.    FreeState's APA Claims Are Not Reviewable.

FreeState has not persuasively or successfully rebutted the Commission's arguments for why the APA precludes jurisdiction over FreeState's APA claims.

### A.  The Alleged Policy Is Neither Discrete Nor Final.

As argued in the Commission's motion, the Complaint describes and seeks judicial relief regarding the Commission's (1) alleged classification decisions of certain charges, (2) dismissal of various lawsuits; and (3) withdrawal of reimbursement for FEPAs. *See* Mot. 19–20. In response, FreeState asserts that those actions are merely "examples" of the alleged Policy, "not the subjects of FreeState's APA challenge." Opp. 20. This response defies the Complaint, which accuses the Commission of adopting the alleged Policy "under which" the Commission has allegedly closed off the charge-investigation process and "has ceased litigating" certain cases. Compl. ¶ 10. FreeState listed no other actions taken "under" the alleged Policy, *id.*, and it is not the job of this Court or of the Commission to do that work, *see Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021) ("The civil plaintiff is the master of his complaint."

(quotation marks omitted)).  Even FreeState's own authorities caution against "attach[ing] a policy label to disparate agency practices or conduct," as FreeState has done.  *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1207 (S.D. Cal. 2019).[4]  And as noted already, *see supra* at __, FreeState's statement that its requested relief would not "require this Court to manage the EEOC's day-to-day operations or entangle the Court in abstract policy questions" is wholly rebutted by the Prayer for Relief.  Opp. 19–20.

Moreover, and more fundamentally, the alleged Policy is not final.  First, FreeState itself expressly asserts that the alleged Policy "has purportedly shifted over time" and thus continues to be revisited by the Commission.  Compl. ¶ 128.  By contrast, the challenged action in *Army Corps of Engineers v. Hawkes*, 578 U.S. 590, 597–98 (2016), was a public determination issued by the agency "after extensive factfinding" that was "typically not revisited."  The alleged Policy here shares no similarly definitive characteristics.

Second, the alleged Policy does not determine rights or obligations as required by *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).  Multiple courts have made clear that EEOC charge-investigation decisions are not final agency action because the charging party can begin further proceedings in district court.  *See, e.g.*, *Georator Corp. v. EEOC*, 592 F.3d 765, 768 (4th Cir. 1979); *Ward v. EEOC*, 719 F.2d 311, 313–14 (9th Cir. 1983).  That those cases dealt with "individual" charging decisions changes nothing, Opp. 22, because the alleged Policy supposedly encompasses decisions made for individual charges, *see* Compl. ¶ 79.

---

[4] FreeState's cited cases are inapposite.  There is no record here, unlike in *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 174 (D.D.C. 2015).  Similarly, the plaintiffs in *Al Otro Lado* cited multiple statements that explicitly referenced an agency "policy."  349 F. Supp. 3d at 1208.  FreeState points to no similar statements here.  Chair Lucas's alleged comments "rolling back the Biden administration's gender identity agenda" cannot be stretched to embrace an agency policy covering three buckets of actions, namely how the agency categorizes certain charges, reimburses FEPAs, or dismisses lawsuits.  Compl. ¶ 66.

FreeState also argues that the alleged Policy binds the Commission. *See* Opp. 21. That is not reflected in the Complaint. As pleaded, the alleged Policy simply expresses the Commission's "view of the law." *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001). And because charging parties retain the right to institute their own lawsuit, the Commission's view "has force only to the extent [the Commission] can persuade a court to the same conclusion." *Id.*; *see also Ward*, 719 F.2d at 313–14 ("[O]nly the district court may fix liability."). In that sense, the Commission's dismissal of its own lawsuits does not determine any rights or obligations for charging parties, and the same is true for the Commission's decision on how to categorize incoming charges. Further on categorization, those "classifications are not static," so nothing binds the Commission to its original designation of a particular charge as a C charge. *See* EEOC, *FY 2020 Charge Report Submitted to Congress*, https://www.eeoc.gov/legislative-affairs/fy-2020-charge-report-submitted-congress. In any event, "the most important factor" for finality is the effect "on regulated entities." *Am. Fed'n of Teachers v. Dep't of Educ.*, 779 F. Supp. 3d 584, 610 (D. Md. 2025) (quotation marks omitted). Commission staff are not regulated entities.

### B. FreeState Has An Adequate Alternative Remedy

FreeState's arguments regarding alternative remedies are not persuasive. *See* Opp. 23–24. The Fourth Circuit has already held that the private cause of action under Title VII provides an adequate alternative remedy for an APA lawsuit regarding how a charge is handled. *See Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016). FreeState's suit is similar in that it seeks an order directing the steps the Commission must take when handling incoming charges. So the same rule should apply, particularly since the private right of action provides de novo review of the allegations of discrimination, and APA review "ordinarily is not available" in such scenarios. *Nielsen*, 666 F. App'x at 231. Multiple other courts have held that the Title VII cause of action is an adequate alternative to the APA. *See* Mot. 22–23 (collecting authorities). That fact alone

11

distinguishes this case from *King v. Burwell*, 759 F.3d 358, 366 (4th Cir. 2014), cited at Opp. 23, where the Fourth Circuit identified no precedent holding that an after-the-fact tax-refund action was an adequate alternative remedy to a pre-enforcement APA case.

### C.  EEOC's Enforcement Decisions Are Committed To Agency Discretion.

FreeState is simply wrong that the alleged Policy is not an action committed to the Commission's discretion by law.  *See* Opp. 24–29.  This case involves precisely the kinds of resource allocation questions that make an agency action unreviewable.  How to categorize incoming charges and the amount of time to devote to investigating them are decisions about "whether a violation has occurred" and "whether the particular enforcement action . . . best fits the agency's overall priorities."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  The agency is best positioned to make those determinations.  Moreover, deciding how extensively to investigate a charge necessarily involves resource allocation decisions.  The Commission receives tens of thousands of charges each year, yet Congress has provided it with only limited resources to evaluate and resolve all of those charges.  Like the agency in *Heckler*, the Commission lacks the resources to "act against every technical violation of the statute it is charged with enforcing."  *Id.* So the alleged Policy as pleaded represents simply a determination about whether limited "agency resources are best spent" on particular charges.  *Id.* at 831.  And FreeState is disingenuous to suggest that evaluating that alleged Policy "will not require the Court to second-guess any EEOC judgments about resource allocation[.]"  Opp. 25.  Vacatur of the alleged Policy for the reasons FreeState suggests would be tantamount to an order directing the Commission to devote resources to investigating every incoming charge, whether or not certain charges fit the agency's priorities.

FreeState's responses are unpersuasive.  The alleged Policy is unlike the policy analyzed in *Casa de Maryland v. DHS*, 924 F.3d 684 (4th Cir. 2019).  *See* Opp. 27.  There, the agency published a memorandum ending a program allowing years-long residence for illegal aliens

brought to the United States as minors, the Deferred Action for Childhood Arrivals (DACA) program. *See id.* at 693–95. That program affected "[h]undreds of thousands of people [who] had structured their lives on the availability of deferred action," *id.* at 705, and who "were eligible to receive a host" of benefits under it, including work authorization and social security, *id.* at 693. The court held that rescinding DACA was a "broad enforcement policy" and is thus unlike the alleged Policy given that the Commission has not discontinued the charge-investigation process for all transgender individuals. *Id.* at 701; *see also id.* at 705 (holding that the government had not adequately accounted for the reliance interests of hundreds of thousands of recipients). And as noted already, the alleged Policy at most directs staff to initially categorize certain charges as C charges, not that those categorizations must remain forever. *See* Compl. ¶ 79. Unlike the decision to end DACA wholesale, a directive about categorization is simply a statement of how staff should make individual decisions on individual charges. *See Casa de Md.*, 924 F.3d at 701 (acknowledging that individual decisions are covered by *Heckler*).

FreeState also responds that the duty to investigate is mandatory and not within the Commission's discretion. *See* Opp. 28. Even if that is true, the Commission is investigating every charge by "mak[ing] an official inquiry" into each charge. *Investigate*, Black's Law Dictionary (12th ed. 2024). Under the alleged Policy as pleaded, staff must look at each charge before categorizing it. FreeState says that Title VII "requires more," but the statute gives no definition or guidelines for what the Commission must do in each investigation. Opp. 29. To require each investigation to involve collection of certain evidence (which must then be shared with potential claimants)—as FreeState suggests when it laments the lack of position statements, *see* Compl. ¶ 117; Opp. 9—would read words into Title VII.

Moreover, even if the Commission's analysis of each charge does not qualify as an investigation, various precedents make clear that the use of "shall" in Title VII cannot displace the Commission's traditional enforcement discretion regarding when to investigate.  *See* Mot. 27–28.  FreeState does not respond to those arguments or precedents.  *Mach Mining* also does not rebut them.  Whether a statute supersedes enforcement discretion depends on "the nature of the administrative action at issue."  *Citizens for Responsibility and Ethics in Washington v. FEC*, 993 F.3d 880, 888 (D.C. Cir. 2021) (quotation marks omitted).  The decision about "when to investigate" is a traditional element of enforcement discretion that cannot be lightly superseded by statute.  *Pierce*, 786 F.2d at 1201.  There is no similar history regarding the unique conciliation obligation examined in *Mach Mining* that Congress "selected" as the "preferred" means to enforce Title VII.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974).

Contrary to what FreeState argues, this Court's review under the APA is limited if the alleged Policy is an action "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Agency actions that qualify for that exception are "shielded from judicial review" under all portions of the APA.  *Larson*, 882 F.2d at 132.  Any suggestion otherwise is incorrect.  But the Commission accepts that Count VI would still be live under this Circuit's precedents.  *See Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001).  Not so for FreeState's arbitrary-and-capricious claim and its contrary-to-law claim.  As discussed above, Title VII provides no standard to overcome the presumption that the Commission's enforcement decisions are committed to agency discretion by law, *see Heckler*, 470 U.S. at 832, and the Commission is meeting any mandatory duty in any event.  *See supra* at 12–13.  The APA's arbitrary-and-capricious provision similarly does not provide a meaningful standard.  *See Lunney v. United States*, 319 F.3d 550, 559 n.5 (2d Cir. 2003).  At the very least, Counts III and IV should be dismissed on this basis.

### III.    Certain Claims Should Be Dismissed On The Merits.

*Counts I and IV.*  FreeState's *ultra vires* claim and its contrary-to-law APA claim (if the Court reaches it) both allege that the Commission violated Title VII by acting without a quorum and not investigating certain charges.  *See* Compl. ¶¶ 134–41, 174–78.  The Commission is investigating all charges under the alleged Policy, so there is no violation on that point.  FreeState asserts, without support, that the alleged Policy is not an "administrative operation[] of the Commission" or represent "determinations on" individual charges.  Opp. 30.  These cursory arguments are insufficient.  And, regardless, the alleged Policy affects how the Commission will categorize incoming charges—clearly an administrative decision about the charge intake process—and which individual cases merit a continued lawsuit.  Those decisions do not require a quorum under Commission regulations.  *See* Mot. 29.[5]  In any event, the Commission now has a quorum and has since October 27, 2025.  *See* EEOC, *Brittany Bull Panuccio, Commissioner*, https://www.eeoc.gov/brittany-bull-panuccio-commissioner.

*Count VI.*  Again, the alleged Policy is not "a substantive change in existing law or policy" requiring notice-and-comment rulemaking.  Opp. 30.  The alleged Policy simply encompasses the Commission's view of the law and how it will enforce that law going forward.  *See supra* at 10–11.  Charging parties may still seek vindication in individual Title VII lawsuits, as they always have been able to do.

### CONCLUSION

For the reasons stated in the Commission's Motion, the Court should dismiss this Complaint.

---

[5] Count I is particularly deficient because a cognizable *ultra vires* claim must allege a violation of a "specific prohibition in a statute."  *NRC v. Texas*, 605 U.S. 665, 681 (2025) (quotation marks omitted).  Title VII's provisions that the Commission "shall investigate" and that "three members thereof shall constitute a quorum" are not prohibitions.  42 U.S.C. §§ 2000e-4(c), 2000e-5(b).

Dated: November 24, 2025          Respectfully submitted,


                                  BRETT A. SHUMATE
                                  Assistant Attorney General
                                  Civil Division

                                  YAAKOV M. ROTH
                                  Principal Deputy Assistant Attorney General
                                  Civil Division

                                  DIANE KELLEHER
                                  Director
                                  Federal Programs Branch

                                  JOHN BAILEY
                                  Counsel to the Assistant Attorney General
                                  Civil Division

                                  */s/ Christian Dibblee*
                                  CHRISTIAN DIBBLEE
                                  Trial Attorney
                                  U.S. Department of Justice
                                  Civil Division, Federal Programs Branch
                                  1100 L Street, N.W.
                                  Washington, D.C. 20005
                                  Tel: (202) 353-5980
                                  Email: Christian.R.Dibblee@usdoj.gov

                                  *Counsel for Defendants*

16