IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREESTATE JUSTICE,                          *

    Plaintiff,                          *

v.                                          *          Civil Action No. GLR-25-2482

EQUAL EMPLOYMENT                            *
OPPORTUNITY COMMISSION, et al.,
                                            *
    Defendants.
                                          ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Equal Employment Opportunity Commission and Andrea Lucas' (collectively, "Defendants") Motion to Dismiss (ECF No. 24). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant Defendants' Motion.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff FreeState Justice ("FreeState") brings this action for declaratory and injunctive relief against Defendants Equal Employment Opportunity Commission ("Commission" or "EEOC") and Andrea Lucas, in her official capacity as Chair of the Commission. (Compl. at 1, ECF No. 1).[2] FreeState is a legal-services nonprofit

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

organization, headquartered in Baltimore, Maryland, that provides free legal services, legislative advocacy, education, and outreach programs for LGBTQ+ individuals. (Id. ¶ 15). Specifically, one of its core services is "helping clients who have experienced discrimination in employment, housing, or healthcare file discrimination charges to address and remedy that discrimination." (Id. ¶ 100).

On January 20, 2025, President Trump issued Executive Order 14168. (Compl. ¶ 62 (citing 90 Fed.Reg. 8,615 (Jan. 20, 2025))). The Executive Order declares it is the policy of the United States to recognize two sexes, male and female. (Id. ¶ 63). The Order instructs federal agencies to "enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes." (Id. ¶ 65 (quoting Executive Order 14168 § 3(b))).

In response to this Order, on January 28, 2025, EEOC Chair Lucas announced that the EEOC was "returning to its mission of protecting women from sexual harassment and sex-based discrimination in the workplace by rolling back the Biden administration's gender identity agenda." (Id. ¶¶ 66, 66 n.16). Lucas further identified several actions that the Commission had taken consistent with the Order, including: (1) ending the use of the 'X' gender marker during the charge intake process; and (2) removing 'Mx.' from the list of prefix options and any materials that promote gender ideology. (Id. ¶ 67).

About two days later, on or around January 30, 2025, FreeState alleges that the Commission ceased processing charges related to sexual orientation and gender-identity discrimination, including harassment. (Id. ¶ 77). At this time, the EEOC has resumed processing charges of gender-identity discrimination that occur during "hiring, firing, and

promotion." (Id. ¶¶ 81, 81 n.59). The Commission has not, however, resumed processing charges alleging harassment or retaliation based on gender-identity. (Id. ¶¶ 82, 82 n.60).

Moreover, on May 28, 2025, the Commission sent a memorandum to directors of state and local Fair Employment Practices Agencies ("FEPAs"),[3] informing them that the EEOC would no longer reimburse FEPAs for processing or investigating charges related to gender identity. (Id. ¶¶ 86, 86 n.62, 91).

In so doing, FreeState contends that the Commission's new policy of selectively investigating gender identity charges (the "Policy") prevents transgender workers from fully participating in the Commission's "charge-investigation process and availing themselves of Title VII's protections against discrimination." (Id. ¶¶ 76, 95, 98). As a result, FreeState now advises its transgender clients to file discrimination charges with the Maryland Commission on Civil Rights ("MCCR"), the state FEPA, rather than the EEOC. (Id. ¶ 105). But, according to FreeState, the MCCR is not an equal substitute for the EEOC's process, as the MCCR charge-investigation process takes longer than the EEOC's, "and the investigation process tends not to yield the same results as does the EEOC process." (Id. ¶ 108). As such, FreeState further alleges that the EEOC's Policy curtails its ability to address workplace discrimination claims—a core service—for its transgender clients. (Id. ¶ 115).

More specifically, FreeState asserts that the Policy: (1) deprives it and its clients of

---

[3] FEPAs are responsible for enforcing their own state and local employment-discrimination laws. (Compl. ¶ 52, ECF No. 1). The EEOC contracts with FEPAs to help fulfill its enforcement responsibilities. (Id.).

information "they would be entitled to receive from the EEOC, including employer position statements and supporting documentation during the charge investigation process" (id. ¶ 117); (2) requires clients to file multiple charges of discrimination with separate agencies (id. ¶ 118); (3) requires FreeState to devote additional time and resources to maintain separate investigations (id. ¶ 120); and (4) makes it difficult for FreeState to provide comprehensive guidance to its clients (id. ¶ 121).

### B.   Procedural History

On July 29, 2025, FreeState filed a Complaint against Defendants, alleging six violations of Title VII (Count I); the Fifth Amendment Equal Protection Clause (Count II); and the Administrative Procedure Act (Counts III–VI). (Id. ¶¶ 134–92). FreeState seeks a declaratory judgment that Defendants' Policy is unlawful and unconstitutional. (Id. at 40). Additionally, FreeState seeks vacatur of the Policy and permanent injunctive relief enjoining Defendants from implementing the Policy, as well as costs and reasonable attorneys' fees. (Id.).

On October 15, 2025, Defendants filed a Motion to Dismiss. (ECF No. 24). FreeState filed an Opposition on November 10, 2025 (ECF No. 26), and Defendants filed a Reply on November 24, 2025 (ECF No. 28). Defendants filed a Notice of Supplemental Authority on November 26, 2025 (ECF No. 29), and FreeState filed a Response to Defendants' Notice on December 4, 2025 (ECF No. 30).

## II.    DISCUSSION

### A.    Standard of Review

A Rule 12(b)(1) motion challenges the Court's jurisdiction over the subject matter of a complaint. Such a challenge can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). For a facial challenge, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" Id. (quoting Kerns, 585 F.3d at 192). When a party brings a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply." Id. (quoting Kerns, 585 F.3d at 192). Here, Defendants bring a facial challenge under Rule 12(b)(1) for lack of standing. (See Defs.' Mem. Supp. Mot. Dismiss ["Mot."] at 15–27, ECF No. 24-1).

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. See Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.   Analysis**

FreeState argues they are entitled to a permanent injunction and declaratory relief on multiple constitutional and statutory grounds. (See Compl. at 40). Before turning to the

merits of their arguments, the Court will first address the Commission's standing challenge. (Mot. at 15–27).

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies," so plaintiffs in federal civil actions must demonstrate standing "for each claim [they] seek[] to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" requirements of standing consist of three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be fairly traceable to the actions of the defendant; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." Lujan, 504 U.S. at 560–61 (citations omitted).

A judicially cognizable injury "requires, among other things," that the "dispute is traditionally thought to be capable of resolution through the judicial process." Raines v. Byrd, 521 U.S. 811, 819 (1997) (citation modified). Challenges to the Executive Branch's "arrest or prosecution policies" seldom qualify. United States v. Texas, 599 U.S. 670, 677 (2023). The Court begins and ends its inquiry here.

At the outset, Defendants contend that FreeState lacks standing to challenge the Commission's discretionary enforcement decisions when FreeState itself was "neither prosecuted nor threatened with prosecution." (Mot. at 17 (quoting Texas, 599 U.S. at 674)). In support of this argument, Defendants cite to the Supreme Court's decision in United States v. Texas, which this Court finds instructive. 599 U.S. 670 (2023). Like this case, United States v. Texas concerned federal agency action in response to a new administration's shifting priorities. See 599 U.S. at 673. There, two states—Louisiana and

7

Texas—sued the Department of Homeland Security ("DHS") for implementing new immigration enforcement guidelines that "prioritize[d] the arrest and removal from the United States of noncitizens who [were] suspected terrorists or dangerous criminals, or who . . . unlawfully entered the country . . . recently." Id. According to the States, DHS's new guidelines violated federal statutes that required the Department to "arrest more criminal noncitizens pending their removal." Id. As such, Texas and Louisiana asked the "Federal Judiciary to order the Department to alter its arrest policy" accordingly. Id. at 676. Declining this invitation, the Supreme Court reasoned that the "Executive Branch—not the Judiciary—makes arrests and prosecutes offenses on behalf of the United States." Id. at 679. And because of this, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." Id. (quoting United States v. Nixon, 418 U.S. 683, 693 (1974)).[4]

---

[4] To be sure, the Supreme Court explained certain circumstances under which courts may entertain a claim of the sort alleged by FreeState:

> First, the Court has adjudicated selective-prosecution claims under the Equal Protection Clause. In those cases, however, a party typically seeks to prevent his or her own prosecution, not to mandate additional prosecution against other possible defendants. Second, . . . the standing analysis might differ when Congress elevates de facto injuries to the status of legally cognizable injuries redressable by a federal court . . . . Third, the standing calculus might change if the Executive Branch wholly abandoned its statutory responsibilities to make arrests or bring prosecutions . . . . Fourth, a challenge to an Executive Branch policy that involves both the Executive Branch's arrest or prosecution priorities and the . . . provision of legal benefits or legal status could lead to a different standing analysis . . . . Fifth, policies governing the continued detention of noncitizens who have already been arrested arguably might

FreeState attempts to distinguish this case from Texas by pointing out that the policy at issue in Texas did not "categorically toss[] out certain charges." (Pl.'s Opp'n Defs.' Mot. Dismiss at 25, ECF No. 26). Even so, the Texas Court made clear that "federal courts are 'not the proper forum for resolving claims that the Executive Branch' should 'bring more' investigations and enforcement actions." Cross v. U.S. Equal Emp. Opportunity Comm'n, 810 F.Supp.3d 88, 95 (D.D.C. 2025) (quoting Texas, 599 U.S. at 680).

While deeply troubling, the Court agrees with Defendants that the EEOC's decision to alter its investigations of gender identity discrimination claims constitutes a discretionary decision over which the Court lacks authority to review. (See Mot. at 18); Cross, 810 F.Supp.3d at 97–98 ("Agency enforcement discretion applies across the board, not just when the courts agree with agency decisions."). In Cross v. United States Equal Employment Opportunity Commission, the United States District Court for the District of Columbia faced a nearly identical challenge to the Commission's new enforcement policy in the wake of President Trump's Executive Orders and reached the same conclusion. See 810 F.Supp.3d at 95–98 (finding that plaintiff lacked standing to assert challenge against EEOC's new policy to stop investigating disparate-impact claims because such decision was discretionary). This Court agrees with the analysis of our sister court in Cross and will adopt its reasoning herein. Accordingly, the Court finds that FreeState lacks standing to

---

raise a different standing question than arrest or prosecution policies.

United States v. Texas, 599 U.S. 670, 681–83 (2023) (internal citations omitted). None of those scenarios are present in this case.

pursue its claims and will dismiss this case, without prejudice, for lack of subject matter jurisdiction.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 24). A separate Order follows.

Entered this 12th day of June, 2026.

_____/s/_____
George L. Russell, III
Chief United States District Judge
